UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | Case No. 3:16-CR-057 JD |
| | ) | |
| CARLOS MAEZ | ) | |

## OPINION AND ORDER

Defendant Carlos Maez is charged with robbing an Old National Bank branch at gunpoint. Both of the tellers who interacted with him during the robbery recognized and identified him based on a booking picture they found on the website of the county jail, which posts pictures of each inmate in the jail. Without the knowledge or prompting of law enforcement, both of the tellers had independently visited the site in hopes of coming across the robber, and both recognized Mr. Maez upon seeing his picture after his arrest (which was based on identifications from other witnesses). Mr. Maez has moved to suppress the tellers' identifications, arguing that the jail's website led to impermissibly suggestive identifications, in violation of his rights under the Due Process Clause.

Upon a referral, the magistrate judge held an evidentiary hearing and issued a Report and Recommendation, recommending that the motion be denied. Mr. Maez filed an objection. He does not dispute the facts set forth in the Report and Recommendation, which the Court thus adopts, but he objects to the conclusions that should be drawn from those facts. Pursuant to 28 U.S.C. § 636(b)(1)(B), when a magistrate judge conducts an evidentiary hearing and submits proposed findings of fact and recommendations, "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*

Mr. Maez's motion to suppress arises under the Due Process Clause of the Fifth Amendment. "Due process will only prohibit evidence when it 'is so extremely unfair that its admission violates fundamental conceptions of justice.'" *Lee v. Foster*, 750 F.3d 687, 691 (7th Cir. 2014) (quoting *Perry v. New Hampshire*, 565 U.S. 228, 237 (2012)). As relevant here, a "'witness's identification violates a defendant's right to due process when the identification procedure is so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'" *Id.* (quoting *United States v. Recendiz*, 557 F.3d 511, 524 (7th Cir. 2009). Courts apply a two-pronged analysis in determining whether an identification procedure rises to that level. *Id.*; *Recendiz*, 557 F.3d at 524. Courts first determine whether the identification procedure was unduly suggestive. *Id.* If so, courts then determine under the totality of the circumstances whether the identification was nevertheless reliable. *Perry*, 565 U.S. at 239. In addition, there is a threshold issue to address before even applying this analysis, which is that the suggestive circumstances must have been "arranged by law enforcement officers." *Id.* at 232. "[W]hen the identification was not procured under unnecessarily suggestive circumstances *arranged by law enforcement*," the reliability of an identification is left to be explored through the trial process, as with other evidence, and the identification is not subject to suppression under the Due Process Clause. *Perry*, 565 U.S. at 248 (emphasis added).

Here, the Court finds that Mr. Maez's argument fails on all three of those issues. First, as a threshold matter, the tellers' identifications were not arranged by law enforcement. To the contrary, both tellers visited the websites of local county jails on their own initiative, hoping to identify the robber. One of the tellers, Shelby Modjeska, began visiting the websites for Elkhart County and St. Joseph County even before she learned that anyone had been arrested for the robbery. She visited the sites periodically over multiple days before finally recognizing Mr.

Maez's picture after his arrest. The other teller, Krystal DeFault, likewise visited the websites on her own, and visited the sites for both Elkhart County and St. Joseph County before recognizing Mr. Maez. The tellers were not directed or encouraged by law enforcement to review those websites, and they were not told which jail he was in, whether his picture would be available on the jail's website, or even that the website existed—they both became aware of the sites through family members or friends and visited the sites on their own initiative.

Mr. Maez argues that the identifications are attributable to law enforcement because the pictures were posted on the jail's website, and that the FBI agent on the case set the identifications in motion by notifying the bank that a suspect had been arrested. However, that the jail's website made it possible for the tellers to locate Mr. Maez's picture does not mean that the jail thereby arranged these identifications. And neither the FBI agent nor anyone else in law enforcement directed, suggested, or even hinted that the tellers should visit the website; they did so entirely on their own, based on their own knowledge of the website's existence and their own desire to identify the person who had robbed them at gunpoint. Perhaps under some other circumstances law enforcement could be found to have indirectly arranged an identification by prompting a witness to visit this sort of website to make an identification, but there is not even a hint of any such indirect encouragement here. Therefore, the Court cannot find that these identifications were arranged by law enforcement, so the motion must be denied on that basis alone.

Even if the identifications were attributable to law enforcement, suppression would still be unwarranted, as Mr. Maez has failed to show either that the identification was unnecessarily suggestive or that any suggestiveness outweighed the other factors supporting the identifications' reliability. Mr. Maez argues that the circumstances of the identifications were suggestive because

both of the tellers knew by the time they identified him that a suspect had been arrested, and because many of the other people whose pictures would have been available at the jail's website likely looked different than him and would not have provided suitable comparisons in a line-up. However, any suggestiveness from those factors fades away when considering what the tellers did *not* know.

First, they did not know where the suspect had been arrested or whether his picture would be at any of the websites they visited. Though the FBI agent notified the bank that a suspect had been arrested, he did not say where or indicate which jail the suspect was housed in. Indeed, both tellers searched the websites for both Elkhart County and St. Joseph County before recognizing Mr. Maez's picture on the St. Joseph County website. And contrary to Mr. Maez's suggestion, they did not know that the suspect's picture would appear on the website for either county. Ms. DeFault testified that she "was not aware" whether the suspect's picture was likely to be in one of those websites, and that she "was just searching." [DE 30 p. 81]. Ms. Modjeska testified that she though the suspect "might" be on the St. Joseph County website and "had an idea" that his picture would be among the pictures on that site, but she did not actually know that—by the time she identified Mr. Maez's picture, she had searched the websites for both Elkhart County and St. Joseph Count, on multiple days, viewing potentially more than 100 pictures, before finally identifying Mr. Maez's picture with confidence. [DE 30 p. 64, 66–67].

Second, the tellers did not know when the suspect was arrested. The FBI agent's email to the bank indicated the day on which the suspect was arrested, but there is no evidence that that information was passed on to either teller. Thus, both tellers searched multiple days' worth of arrests before finally coming across Mr. Maez's picture, and would have presumably kept looking if they had not been confident in their identification once they saw Mr. Maez. Ms.

DeFault testified that she did not know when the suspect had been arrested, so she searched by arrest date, beginning with the date she was notified that a suspect was in custody (October 26, 2015), and moving back from there until she recognized Mr. Maez's picture. [DE 30 p. 79]. Since Mr. Maez was arrested on October 23, 2015, that means she reviewed four days' worth of arrests in two counties. *Id.* at 84. Ms. Modjeska likewise visited the websites on multiple days, and testified that she looked at "a lot" of pictures, meaning "at least" fifty and possibly over a hundred, before finally finding Mr. Maez's picture. *Id.* at 53–56, 66.

Third, the tellers did not know what the suspect had been arrested for. The FBI agent's email to the bank indicated only that the suspect had been arrested on "an unrelated charge," without specifying what charge. Thus, the tellers could not have excluded any other pictures based on the charges listed on the website, as the robbery suspect could have been arrested for anything. And as to Mr. Maez, the website did not list the charge for which he was arrested; it indicated only that he had a "hold," which would not have drawn attention to him or suggested that the police believed he committed the bank robbery.

In light of each of those factors, the Court cannot find that the identification procedure was unnecessarily suggestive. The tellers did know (though they may have hoped or suspected) that the suspect's picture would be included in the pictures they reviewed on the websites. Before seeing Mr. Maez's picture and identifying him as the robber, both tellers had reviewed multiple days' worth of arrests in two counties, which amounted to scores of pictures, and possibly over a hundred. Though, as Mr. Maez notes, some of those pictures likely depicted individuals of a different race or sex, many of those pictures were likely not so easily distinguishable. In fact, as Mr. Maez also notes, sixteen of the twenty-six individuals arrested in St. Joseph County on October 23, 2015 alone were white males, like Mr. Maez. Adding the pictures from the two

5

counties over multiple days would have produced a sizable pool of individuals who could have been acceptable counterparts in a lineup. *United States v. Traeger*, 289 F.3d 461, 474 (7th Cir. 2002) ("Authorities conducting lineups are required only to make reasonable efforts under the circumstances to conduct a fair and balanced presentation. They are not required to search for identical twins in age, height, weight, or facial features."). And since the website did not identify Mr. Maez as having been arrested for bank robbery, nothing about this process would have drawn the tellers to Mr. Maez in particular. Accordingly, the Court finds that the identification process was not unnecessarily suggestive. *United States v. Jones*, 454 F.3d 642, 649 (7th Cir. 2006) (finding no suggestive procedure where the agent identified the defendant from more than one hundred individuals included in a file that contained pictures of nearby residents who had previously been arrested).

Finally, even if this process was unnecessarily suggestive, that would not result in the suppression of this evidence. As the Supreme Court has noted, even when the police use an unnecessarily suggestive identification procedure, "suppression of the resulting identification is not the inevitable consequence." *Perry*, 565 U.S. at 239. Rather, courts consider the totality of the circumstances to determine whether the improper police conduct created a "'substantial likelihood of misidentification.'" *Id.* (quoting *Neil v. Biggers*, 409 U.S. 188, 201 (1972)). The Supreme Court has identified a number of factors to consider in making this determination, including (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation. *Id.* at 239 n.5 (citing the factors identified in *Biggers*, 409 U.S. at 199–200, and *Manson v. Braithwaite*, 432 U.S. 98, 114 (1977)); *see also United States v. Funches*, 84

6

F.3d 249, 255 (7th Cir. 1996) (holding that suppression of an identification of a bank robber was unwarranted, even though it was procured through impermissibly suggestive procedures, as the totality of the circumstances showed that the identification was nonetheless reliable).

All of those factors weigh in favor of these identifications' reliability. First, though the lighting in the bank was somewhat dim and the robber wore a fake beard as a disguise, both tellers still had a very good opportunity to observe him during the crime. The upper portion of the robber's face was still visible despite the fake beard, including the area around his nose, cheeks, and eyes. Both tellers stood across the counter from the robber looking directly at him for multiple minutes while Ms. Modjeska complied with his demands and assembled the cash. Second, the tellers paid a high degree of attention—as bank tellers, they were trained to study and memorize the features of a bank robber so that they could make a later identification. [DE 30 p. 73 ("I just stood there with my hands up and stared and memorized as much as I could about his face and clothing he was wearing, anything and everything I could remember I tried to memorize."), 77 ("I concentrated on what I could see, his eyes, his cheek bones, you know, the little bit of forehead, you could see his ears, things of that nature.")].

Third, both of their descriptions of the robber immediately following the robbery were reasonably consistent with Mr. Maez, with slight variations as to his height. Fourth, both tellers expressed confidence in their identifications. Ms. Modjeska testified that she was "confident" in her identification, *id.* at 63, and Ms. DeFault testified that as soon as she saw Mr. Maez's picture, she "knew without a shadow of a doubt that was the gentleman" who robbed her, *id.* at 81. And fifth, both tellers made their identifications within two weeks of the robbery, at which point their recollections of such a startling event would have still been strong. In sum, each of those factors supports the reliability of these identifications. Thus, even if the police had arranged the

7

identification and had done so with unnecessarily suggestive procedures, the totality of the circumstances would still make suppression of these identifications unwarranted, as the identifications are not so unreliable as to violate Mr. Maez's due process rights. *See Traeger*, 289 F.3d at 474 (finding under similar circumstances that the identification was reliable even if the lineup had been suggestive).

The Court also notes that some of Mr. Maez's filings refer to Rules 403 and 404(b) of the Federal Rules of Evidence. However, his arguments in that respect are underdeveloped, and those evidentiary matters are outside the scope of a motion to suppress. In any event, those rules would not justify excluding these identifications. The identity of the robber is the critical question in this case, and the identifications by two tellers who stood face-to-face with the robber during the offense are important pieces of evidence. Their value is not substantially outweighed by any of the factors Mr. Maez identifies, as the jury is capable of understanding and attaching appropriate weight to the factors bearing on the reliability of those identifications. To the extent Mr. Maez seeks to limit the details about his criminal history that will be revealed to the jury, that is also outside the scope of the motion to suppress and would not justify excluding these identifications, but that issue can be further explored prior to trial.

For those reasons, the Court OVERRULES Mr. Maez's objections [DE 37], ADOPTS the Report and Recommendation [DE 36], and DENIES the motion to suppress [DE 20].

SO ORDERED.

ENTERED: June 15, 2017

                                           /s/ JON E. DEGUILIO
                                           Judge
                                           United States District Court